**Merlin JAMES, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–10–00693–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 19, 2012.

Discretionary Review Refused Sept. 12, 2012.

J. Sidney Crowley, Houston, TX, for Appellant.

Bridget Holloway, Assistant District Attorney, Houston, TX, for State.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

A jury convicted appellant Merlin James of aggravated robbery. TEX. PENAL CODE ANN. § 29.03 (West 2011). The judgment reflects an affirmative deadly-weapon finding. James pleaded "true" to two prior convictions and the court sentenced him to 45 years in prison.

James presents three issues on appeal: (1) the evidence was legally insufficient to show that an air rifle used in the robbery was a deadly weapon; (2) the court erred in refusing to instruct the jury on the lesser-included offense of theft; and (3) the court erred by allowing the State to amend an enhancement allegation contained in the indictment after trial had begun. We modify the judgment to reflect that James pleaded "true" to two prior convictions and that the court found those convictions to be "true," and we affirm the judgment of the trial court as modified.

### Background

Two brothers and their 11–year–old cousin were walking home from a sandwich shop after dark on a sidewalk when they were passed by a minivan with its headlights off. The van abruptly turned around and stopped near them. James, who was driving the van, got out, approached the complainants, and said, "You know what's up. You know what time it is." The brothers understood that they were being robbed.

At some point during the encounter, the sliding minivan door opened to reveal another passenger who said, "Let's light [them] up." James told the passenger to get the "AK" and said, "We going shoot one of them." The passenger reached

back to retrieve an air rifle and held it in his lap while pointing the barrel at the complainants. Meanwhile, the brothers placed their personal valuables in the sandwich bag for James to take. At trial, one of the brothers testified that the sight of the "AK" made him fear for his life.

As James walked back toward the minivan, a police car on patrol approached from behind with its emergency lights and spotlight on. The officers detained and questioned everyone at the scene. Concluding that they had just come upon a robbery, they arrested James and the two passengers in the minivan.

James was tried for robbery and aggravated robbery along with co-defendant Josef Kawaski Jones. The jury convicted both of aggravated robbery, and the court sentenced James to 45 years in prison.

## Analysis

### I. Legal sufficiency of the evidence

■ James argues in his first issue that the evidence presented at trial was legally insufficient to support the conviction for aggravated robbery. He argues that the State failed to present legally sufficient evidence that the air rifle brandished during the episode qualifies as a "deadly weapon," the use or exhibition of which enhances the charge of robbery to aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (establishing enhancement elements of aggravated robbery).

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each and every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State,* 175 S.W.3d 795, 798 (Tex.Crim.App.2005). We do not re-

solve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as these are the functions of the trier of fact. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999). Rather, an appellate court presumes that the factfinder resolved any conflicting evidence in favor of the verdict and defers to that resolution so long as it is supported by the record. *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

An actor commits an aggravated robbery if he commits a robbery under Section 29.02 of the Penal Code while he "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.03(a)(2). A "deadly weapon" is defined by the Penal Code as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). Our determination of whether the State introduced sufficient evidence to prove that a given air rifle qualifies as a "deadly weapon" requires a case-by-case analysis in light of the statutory standards. *Compare Campbell v. State,* 577 S.W.2d 493, 495–96 (Tex.Crim.App.1979) (finding sufficient evidence of an air pistol's deadly-weapon status when testimony established that it could kill a person if fired at close range), *with Mosley v. State,* 545 S.W.2d 144, 145–46 (Tex.Crim.App.1976) (holding that BB gun did not fit the statutory definition of a "deadly weapon" when expert witness testified that its projectiles could not penetrate the skin).

The State presented evidence at trial to show that the air rifle used during the robbery was a deadly weapon. D. Eudaley, a firearms expert for the Houston Police Department, testified that a lead pellet would need to travel at least 290 feet per second in order to penetrate the skin, and that it would always embed itself under the skin at 365 feet per second. She testified that she had conducted velocity tests of the rifle by using lead pellets, and she concluded that these were propelled at between 479 and 524 feet per second, with an average of 508 feet per second. In sum, Eudaley testified that the rifle propelled pellets at speeds in excess of what is required to penetrate the surface tissues of the human body.

This testimony was legally sufficient to establish that the air rifle was a "deadly weapon" as defined by the Penal Code. Based on Eudaley's expert testimony, a factfinder could conclude beyond a reasonable doubt that, if used to shoot a person in the eye or other sensitive part of the body, the air rifle was capable of causing serious bodily injury, including the possibility of "permanent disfigurement" or "protracted loss or impairment of the function of any bodily member or organ." *See* TEX. PENAL CODE ANN. § 1.07(a)(17), (46). Viewing the evidence in the light most favorable to the verdict, we hold the State's evidence sufficient to support the jury's conclusion about the deadly-weapon status of the air rifle. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Drichas,* 175 S.W.3d at 798; *cf. Adame v. State,* 69 S.W.3d 581, 582 (Tex.Crim.App.2002) (holding that State had presented sufficient evidence that a particular BB gun was capable of causing serious bodily injury).

James argues that despite Eudaley's testimony about the capability of the air rifle, precedent precludes a finding of deadly-weapon status here because, first, there was no evidence that the air rifle was loaded during the robbery and, second, the air rifle's barrel was pointed only generally at the complainants but not up close or in their faces.

■ Whether an airgun is loaded at the time of a criminal transaction is insignificant to the deadly-weapon analysis, since the crucial question is only whether it is "capable of causing serious bodily injury." *Adame,* 69 S.W.3d at 582. Therefore, the fact that the State did not provide evidence at trial that the airgun was loaded does not undermine the deadly-weapon finding.

■ Moreover, James's objections to the sufficiency of the evidence based upon the proximity and direction of the airgun's barrel are not germane to the deadly-weapon finding, but rather to whether the weapon was "use[d] or exhibit[ed]" during the commission of a robbery. TEX. PENAL CODE ANN. § 29.03(a)(2). James does not dispute that the State presented evidence that the air rifle was used during the robbery. The complaining witnesses testified that they had seen the air rifle held by James's accomplice, that it was pointed at them, and that it instilled fear in them. When there is no dispute about whether an airgun has been used or exhibited during a robbery, the question of whether the offense is enhanced to aggravated robbery hinges on the capability of the airgun. *See Adame,* 69 S.W.3d at 582 ("[T]his case is not a 'used or exhibited' case since the evidence clearly shows that appellant used and exhibited the BB gun during the convenience store robbery. The issue here is whether appellant's BB gun was 'capable' of causing serious bodily injury."). As discussed above, there was legally sufficient evidence to find that the airgun was capable of causing serious bodily injury, and therefore we need not consider the prox-

imity of the airgun's barrel or where it was pointed in our deadly-weapon analysis. The visible presence of a deadly weapon on a criminal actor, even if it is not menacingly pointed at another, satisfies the statutory element of use or exhibition. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim.App.2000) (finding legally sufficient evidence that butcher knife was used or exhibited during robbery when it was only partially exposed in defendant's back pocket).

Based on the evidence, a rational jury could have found that a deadly weapon was used or exhibited in the course of the robbery. Therefore, we conclude that the evidence was sufficient to sustain the verdict that James was guilty of aggravated robbery. We overrule James's first issue.

## II. Lesser-included offense

 James next argues that the trial court erred in denying his request that the jury be instructed on the lesser-included offense of theft. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09 (West 2006) (prescribing criteria for lesser-included offense). To determine whether a defendant is entitled to an instruction on a lesser-included offense, courts apply a two-pronged test. *See Ex parte Watson*, 306 S.W.3d 259, 262–63 (Tex.Crim.App.2009); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex.Crim.App. 2007). The first prong of the test requires the court to use the "cognate pleadings" approach to determine whether an offense is a lesser-included offense of another offense. *Watson*, 306 S.W.3d at 271–72. This standard is satisfied if the indictment for the greater-inclusive offense either alleges all of the elements of the lesser-included offense, or it alleges elements plus facts from which all of the elements of the lesser-included offense may be deduced. *Id.* at 273. This inquiry is a question of law. *Hall*, 225 S.W.3d at 535. The

second prong asks whether there is any evidence that supports giving the lesser-included offense instruction to the jury. *Id.* at 536. A defendant is entitled to a requested instruction on a lesser-included offense when some evidence admitted at trial would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to the lesser charge. *Id.*

 As to the first prong, theft is a lesser-included offense of both robbery and aggravated robbery. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994). This is derived from the Penal Code, because an element of aggravated robbery is commission of a robbery, and an element of robbery is commission of a theft. *See* TEX. PENAL CODE ANN. §§ 29.02 (robbery), 29.03 (aggravated robbery), 31.03 (theft).

 The second prong requires that there be more than a scintilla of evidence which would permit a rational jury to conclude that James is guilty of theft rather than robbery or aggravated robbery. *See Hall*, 225 S.W.3d at 536. The presence of a threat or of a deadly weapon is what distinguishes robbery and aggravated robbery from theft. *Bignall*, 887 S.W.2d at 23; *Holiday v. State*, 14 S.W.3d 784, 788 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). James argues that had the charge included an instruction on theft, the jury could have disbelieved the complaining witnesses about having seen the air rifle and feeling threatened by it, and it thereby could have convicted him of theft.

The two complaining witnesses both testified to seeing the air rifle pointed in their direction and feeling intimidated by James's aggressive demeanor. The mere possibility that the jury could have simultaneously credited the complaining wit-

nesses about the taking of their property while also disbelieving them about threats made or perceived is inadequate to entitle James to an instruction on theft. *See Bignall,* 887 S.W.2d at 24 ("[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted."); *Holiday,* 14 S.W.3d at 788 (affirming trial court's denial of requested instructions for lesser-included offenses when there was no evidence in the record showing that the appellant could have been guilty only of lesser-included offenses). There was no testimony directly germane to the offense of theft. Therefore, the trial court did not err in denying the defense's request for a jury instruction on theft. Accordingly, we overrule James's second issue.

### III. Amended enhancement allegation in indictment

In his third and final issue, James contends that the trial court erred in allowing the State to amend an enhancement allegation contained in the indictment. The indictment as originally written alleged that "on FEBRUARY 2, 2005, in Cause No. 0410212870," James was previously convicted of the felony of "INJURY OF THE ELDERLY" in the "377TH DISTRICT COURT of HARRIS County, Texas." In fact, James had been previously convicted of injury to a child in the 377th District Court of Victoria County. Consistent with the details of the prior offense, twenty-seven days before the first day of trial, the State filed with the trial court and served on defense counsel its "Notice of Intention to Use Prior Convictions and Extraneous Offenses," in which it announced its intention to introduce evidence of James's prior conviction of "INJURY

TO CHILD, ELDERLY, DISABLED INDIVDUAL" in "VICTORIA / 377 / 2-2-05." The notice expressly stated the State's intention to introduce the prior offense to "enhance the range of punishment for the Defendant," among other purposes. The variance between "elderly" and "child" is not relevant to the identification of the alleged statutory offense in this case, since injury to either constitutes the same offense under the Penal Code. *See* TEX. PENAL CODE ANN. § 22.04(a) (West 2011).

After trial on the merits commenced and the jury returned a guilty verdict, but before the punishment phase of the trial began, James moved to quash this enhancement allegation. In response, the State orally moved for leave of the court to amend the indictment so as to correct the victim and county information for the prior conviction. Over James's objection, the court granted the State's motion to amend the enhancement allegation and made a handwritten, interlineal correction on the face of the indictment. James pleaded "true" to the amended enhancement allegation.

#### A. Amendments to indictment

Article 28.10 of the Code of Criminal Procedure provides the guidelines for when an indictment can be amended:

AMENDMENT OF INDICTMENT OR INFORMATION

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also

be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX.CODE CRIM. PROC. ANN. art. 28.10. The Court of Criminal Appeals provided the framework for interpreting Article 28.10 in *Hillin v. State,* 808 S.W.2d 486 (Tex.Crim. App.1991) (plurality op.). Hillin was originally indicted for aggravated assault on a correctional officer "by throwing porcelain." *Hillin,* 808 S.W.2d at 486. On the first day of trial, Hillin directly attacked the allegation regarding the substance of the object used to perpetrate the assault. *Id.* In response to that strategy, the State moved on the second day of trial to amend the indictment to say that Hillin had committed the assault "by throwing a commode." *Id.* at 486–87. The trial court amended the indictment over Hillin's objection, and the jury subsequently convicted him. *Id.*

The Court of Criminal Appeals reversed the conviction and remanded the case to the trial court. *Id.* at 489. The *Hillin* plurality interpreted Article 28.10 of the Code of Criminal Procedure to give a criminal defendant "an absolute veto power" over amendments to the indictment after trial begins:

... [Article 28.10(b) ] allows the State to amend the indictment after the trial on the merits has commenced unless the defendant has interposed a timely objection to the attempted amendment. The language and wording of Article 28.10(b), supra, is clear and unambiguous and if the defendant, after trial on the merits has commenced, interposes a

timely objection to the State's proposed amendment, be it to form or substance, such amendment is absolutely prohibited. It appears the court of appeals was of the opinion that in regard to Section (b) after a trial amendment, a "substantial rights" analysis was to be performed pursuant to Section (c) which prohibits the State from amending the indictment if such amendment transformed the allegations to additional or different offenses or prejudiced the substantial rights of the defendant. We do not find such reasoning persuasive.

Article 28.10(c) prohibits the State from amending the indictment over a defense objection if such amendment results in an additional or different offense or if it adversely prejudices the substantial rights of the defendant. Section (c) makes no mention as to whether it applies to Sections (a) and (b) or only to one of the preceding sections. We conclude that an analysis pursuant to Section (c) could only be logically applied to an indictment amendment which falls under the purview of Section (a).…

At first blush one might suspect that the provisions of Section (c) are applicable to both Sections (a) and (b) because of the structure of Article 28.10. However, as previously stated, a defendant under the clear language of Section (b) has an absolute veto power over proposed amendments after trial on the merits has commenced.

*Id.* at 488–89 (footnotes omitted); *see also Brown v. State,* 828 S.W.2d 762, 763 (Tex. Crim.App.1991) ("[T]he clear import of our holding in *Hillin* was that the requisites of Article 28.10(b), which inferentially prohibit trial amendments over objection, are absolute.").

█ Although *Hillin* concerned a case in which the State had attempted an amendment to the main charge of the in-

dictment during the guilt-innocence phase of the trial, this court has relied on *Hillin* and the subsequent opinion on rehearing in *Sodipo v. State*, 815 S.W.2d 551 (Tex. Crim.App.1991), to hold that an amendment to an enhancement paragraph in the indictment at the beginning of the punishment phase of a trial is likewise subject to the defendant's absolute veto under Article 28.10(b). *See Boutte v. State*, 824 S.W.2d 322, 323 (Tex.App.-Houston [1st Dist.] 1992, pet ref'd). Under *Boutte*, when the trial court erroneously permits the State to amend an enhancement paragraph in the indictment over the defendant's objection at the commencement of the punishment phase of trial, the remedy was for this court to reverse and remand the case to the trial court for a new trial on punishment only. *Id.* at 324.

In arguing for the validity of the amendment in this case, the State relies upon *Simmons v. State*, 288 S.W.3d 72 (Tex. App.-Houston [1st Dist.] 2009, pet ref'd), in which this court overruled a criminal appellant's challenge to an amendment to the indictment. That opinion is distinguishable because its dispositive reasoning was that the appellant had failed to prove that the amendment by interlineation had occurred after trial began. *Simmons*, 288 S.W.3d at 79–80. In this case, it is undisputed that the State moved to amend one of the enhancement paragraphs in the indictment after trial on the merits began and that the trial court effectuated the amendment over the defendant's objection. Therefore, following *Hillin* and *Boutte*, we hold that the trial court erred in making the State's requested amendment.

We acknowledge that other courts of appeals have held that Article 28.10 does not apply to enhancement paragraphs in the indictment. *See, e.g., Thomas v. State*, 286 S.W.3d 109, 114 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Stautzenberger*

*v. State*, 232 S.W.3d 323, 327–28 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *Johnson v. State*, 214 S.W.3d 157, 158–59 (Tex. App.-Amarillo 2007, no pet.). We cannot follow their lead because this court already has binding, on-point precedent in *Boutte*. The doctrine of stare decisis compels us to adhere to our court's precedent absent some special justification for departing from it. *See, e.g., Dickerson v. United States*, 530 U.S. 428, 443, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405 (2000); *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex.Crim.App. 2007). No such special justification for abandoning our precedent has been suggested in this case.

## B. Harmless error

■ The *Boutte* court, following *Hillin*, remanded the case for a new trial on punishment when the trial court amended the enhancement allegation over the defendant's objection. *Boutte*, 824 S.W.2d at 324. The *Boutte* opinion did not apply a harm analysis, following *Sodipo*, for the proposition that a violation of Article 28.10 was not subject to harmless-error review. *See Boutte*, 824 S.W.2d at 323. This court has subsequently recognized that *Sodipo* has been implicitly overruled in that regard. *See Conner v. State*, No. 01–00–00383–CR, 2001 WL 204223, at *2 (Tex. App.-Houston [1st Dist.] Mar. 1, 2001, pet. ref'd) (mem. op., not designated for publication) (citing *Wright v. State*, 28 S.W.3d 526, 531–32 (Tex.Crim.App.2000)). Thus, we will disregard the trial court's error if it did not affect James's substantial rights. *See* TEX.R.APP. P. 44.2(b); *Gray v. State*, 159 S.W.3d 95, 98 (Tex.Crim.App.2005) (stating that "when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis").

■ James's right to have adequate prior notice of enhancement allegations against him is "of constitutional origin."

*Villescas v. State,* 189 S.W.3d 290, 294 (Tex.Crim.App.2006) (citing *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). Although a defendant is constitutionally entitled to adequate prior notice of enhancement allegations, "alleging an enhancement in the indictment is not the only reasonable method of conveying such notice." *Brooks v. State,* 957 S.W.2d 30, 33 (Tex.Crim.App.1997). The use of a prior conviction as a sentencing enhancement must be pleaded in some form, but it need not be pleaded in the indictment, "although it is permissible and perhaps preferable to do so." *Id.* at 34. "In determining whether appellant received sufficient notice of the State's intent to enhance punishment, we look to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Pelache v. State,* 324 S.W.3d 568, 577 (Tex. Crim.App.2010).

Twenty-seven days before trial in this case, the State filed with the trial court and served on James's counsel a "Notice of Intention to Use Prior Convictions and Extraneous Offenses" which reflected the correct charge and county information regarding James's prior conviction. This notice was sufficient to apprise James of the prior convictions that the State intended to use against him as punishment enhancements. *See id.* at 569–70 (concluding that "appellant's federal constitutional due-process rights were not violated" when the State notified the defendant 16 days before the punishment hearing that it intended to use prior convictions for enhancement purposes); *Villescas,* 189 S.W.3d at 295 (concluding that "appellant was given sufficient notice of the enhancement allegation" when the State filed and served a "notice of enhancement" 6 days before trial); *see also Brooks,* 957 S.W.2d at 34 (holding that "the requisite notice was conveyed" when the State filed a motion to add an enhancement paragraph to indictment and the

court granted the motion but indictment was not physically altered); *Thompson v. State,* Nos. 01–06–01084–CR & 01–06–01085–CR, 2008 WL 2756596, at *4 (Tex. App.-Houston [1st Dist.] July 17, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that "Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses" received by defendant 3 months before trial provided sufficient notice that a prior conviction would be used to enhance sentencing). Moreover, "when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." *Villescas,* 189 S.W.3d at 294. James has not proposed a defense to the enhancement allegation nor suggested that he needed a continuance. In light of the sufficient timing of the State's notice and James's lack of a substantive defense to the challenged enhancement paragraph, we hold that the trial court's erroneous amendment of the indictment did not affect James's substantial rights. Tex.R.App. P. 44.2(b).

We overrule James's third issue.

### Modification of judgment

 The trial court's judgment does not accurately comport with the reporter's record in that it does not reflect James's pleas of "true" to two enhancement paragraphs—including the amended enhancement paragraph—and the trial court's implied findings of "true" by way of accepting those pleas. "[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source." *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App.1992) (citing *Asberry v. State,* 813 S.W.2d 526, 531 (Tex.App.-Dal-

las 1991, pet. ref'd)); *accord Nolan v. State*, 39 S.W.3d 697, 698 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that an appellate court has the power to correct and reform a trial judgment to make the record speak the truth when it has the necessary data and information to do so); *see also* Tex.R.App. P. 43.2(b). The record supports modification of the judgment with regard to James's pleas to and the trial court's findings on the enhancement paragraphs. Accordingly, the trial court's judgment is modified to reflect that James pleaded "true" to both enhancement paragraphs and that the trial court found both enhancement paragraphs to be "true."

### Conclusion

We modify the judgment to reflect that James pleaded "true" to the first and second enhancement paragraphs and the trial court found those enhancement paragraphs to be "true," and we affirm the judgment of the trial court as modified.

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.

I respectfully concur. I agree with the majority's conclusion that the evidence was sufficient to support appellant Merlin James's conviction for aggravated robbery. I also agree that the trial court did not err in refusing to instruct the jury on the lesser-included offense of theft. However, I disagree with the majority's construction of the law governing corrections to an enhancement paragraph that is not part of the charged offense in an indictment. Specifically, I disagree that immaterial corrections in such an enhancement paragraph at the sentencing phase of a trial, over the defendant's objection, are error within the scope of article 28.10(b) of the Code of Criminal Procedure. I would also overrule this Court's prior ruling in *Boutte*

*v. State*, 824 S.W.2d 322, 323 (Tex.App.-Houston [1st Dist.] 1992, pet ref'd), which the majority relies upon, as erroneously confusing the ministerial correction of an enhancement paragraph at the sentencing phase of a trial with an amendment of the charged offense in the indictment during trial that is subject to article 28.10(b).

### Amended Enhancement Allegation in Indictment

In his third issue, James contends that the trial court erred in allowing the State to amend an enhancement allegation contained in the indictment at the beginning of the sentencing phase of his trial, over his objection, in violation of Code of Criminal Procedure article 28.10. He contends that the erroneous amendment entitles him to a new trial on punishment.

The original enhancement paragraph in the indictment alleged that James had a previous conviction for the felony offense of "INJURY OF THE ELDERLY" in the "377TH DISTRICT COURT of HARRIS County." James had actually been previously convicted of the offense of injury to a child in the 377th District Court of Victoria County. Twenty-seven days before the trial started, the State filed and served on defense counsel a "Notice of Intention to Use Prior Convictions and Extraneous Offenses," which described the correct prior conviction of "INJURY TO CHILD, ELDERLY, DISABLED [INDIVIDUAL]" in "VICTORIA / 377." I agree with the majority that the variance between "elderly" and "child" is not statutorily relevant because injury to either constitutes the same offense under the Penal Code. *See* Tex. Penal Code Ann. § 22.04(a) (Vernon 2011). I disagree with the remainder of the majority's reasoning.

After trial on the merits, but before the punishment phase began, James moved to quash the enhancement allegation. The

State orally moved for leave to amend the enhancement paragraph to correct the offense title and county information for the prior conviction. Over James's objection, the court granted the State's motion and made a handwritten, interlineal correction on the face of the indictment. James then pleaded true to the amended enhancement paragraph. On appeal, James contends that the trial court's correction of the enhancement paragraph constituted an impermissible trial amendment under Code of Criminal Procedure article 28.10(b) that was not subject to a harm analysis under controlling law.

### Analysis

Amendments to an indictment are governed by Code of Criminal Procedure article 28.10, which provides:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) *A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.*

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Tex.Code Crim. Proc. Ann. art. 28.10 (Vernon 2006) (emphasis added).

The majority relies upon *Hillin v. State* in determining that the trial court's interlineated correction of the title of James's prior offense and the county of his prior conviction in the enhancement paragraph was a trial amendment subject to article 28.10(b). 808 S.W.2d 486 (Tex.Crim.App. 1991) (plurality op.). In *Hillin,* the trial court granted the State's motion to amend the indictment during trial on the merits over Hillin's objection, changing the charge from aggravated assault on a correctional officer "by throwing porcelain" to aggravated assault "by throwing a commode." *Id.* at 486–87. The court of appeals affirmed, holding that Hillin's substantial rights had not been affected by the trial amendment. *Id.* at 487. The Court of Criminal Appeals reversed Hillin's conviction and remanded the case to the trial court. *Id.* at 489.

The Court of Criminal Appeals interpreted subsection (b) of article 28.10 as providing a defendant who objects to a trial amendment to an indictment an absolute veto over the amendment. *Id.* The court also expressly rejected the application of the substantial rights test set out in subsection (c) to a subsection (b) violation. *Id.* at 488. It stated:

The language and wording of Article 28.10(b) ... is clear and unambiguous and if the defendant, after trial on the merits has commenced, interposes a timely objection to the State's proposed amendment, be it to form or substance, such amendment is absolutely prohibited. It appears the court of appeals was of the opinion that in regard to [s]ection (b) after a trial amendment, a "substantial rights" analysis was to be performed pursuant to [s]ection (c) which prohibits the State from amending the indictment if such amendment transformed the allegations to additional or different offenses or prejudiced the substantial

rights of the defendant. We do not find such reasoning persuasive.

Article 28.10(c) prohibits the State from amending. the indictment over a defense objection if such amendment results in an additional or different offense or if it adversely prejudices the substantial rights of the defendant. Section (c) makes no mention as to whether it applies to [s]ections (a) and (b) or only to one of the preceding sections. We conclude that an analysis pursuant to [s]ection(c) could only be logically applied to an indictment amendment which falls under the purview of Section (a). . . .

At first blush one might suspect that the provisions of [s]ection (c) are applicable to both [s]ections (a) and (b) because of the structure of Article 28.10. However, as previously stated, a defendant under the clear language of [s]ection (b) has an absolute veto power over proposed amendments after trial on the merits has commenced.

*Id.* at 488–89 (citations omitted).

In *Boutte v. State*, this Court extended the Court of Criminal Appeals' plurality holding in *Hillin* to prohibit an amendment to an enhancement paragraph in the indictment made at the beginning of the punishment phase of a trial over the defendant's objection. *See* 824 S.W.2d 322, 323–24 (Tex.App.-Houston [1st Dist.] 1992, pet ref'd) (holding that amendment to enhancement paragraph that deleted word "aggravated" from "aggravated robbery"

in prior conviction was subject to defendant's absolute veto under article 28.10(b) and reversing and remanding for new trial on punishment). The majority concludes, pursuant to *Boutte*, that the corrections to the enhancement paragraph in this case were an improper trial amendment that violated article 28.10(b), but it holds that James's substantial rights were not affected by the erroneous amendment, and, thus, it affirms the judgment of the trial court.[1]

I disagree with the majority's decision to follow *Boutte* in holding that the correction of immaterial variances in prior convictions alleged in enhancement paragraphs that are not part of the charged offense in the indictment are amendments to the indictment subject to the defendant's absolute veto under article 28.10(b), rather than mere surplusage that may be corrected at trial without violating article 28.10(b). I would overrule *Boutte,* and I would follow our sister courts of appeals in distinguishing between ministerial corrections to enhancement paragraphs that are not part of the State's case-in-chief and amendments to the charged offense in the indictment. *See Thomas v. State,* 286 S.W.3d 109, 114 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (holding that enhancement allegation that is not part of State's case-in-chief is not part of substance of indictment; therefore, article 28.10, which grants defendant right to object to amendment to indictment

---

**1.** The majority supports its decision to conduct a harm analysis by arguing that the Court of Criminal Appeals implicitly overruled a successor case to *Hillin—Sodipo v. State,* 815 S.W.2d 551 (Tex.Crim.App.1990)— in *Wright v. State,* 28 S.W.3d 526 (Tex.Crim. App.2000). The issue of whether *Wright* overruled *Sodipo* and, necessarily, *Hillin* with regard to whether a harm analysis is appropriate for an article 28.10(b) violation is, in my view, unnecessary to the disposition of this case and a misleading distraction if, as I

argue below, an amendment to an enhancement paragraph in an indictment is a correction of mere surplusage in the indictment and therefore does not fall within the scope of article 28.10(b). If my construction of *Wright,* discussed below, is correct, *Wright* holds that a harm analysis is appropriate to determine whether a correction to mere surplusage in an indictment is reversible error, not that a harm analysis is appropriate when article 28.10(b) is violated. *See* 28 S.W.3d at 531–32.

after trial has started, does not apply to amendment of enhancement allegations at trial); *Stautzenberger v. State,* 232 S.W.3d 323, 327–28 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding that article 28.10 applies to amendments to indictment that charge defendant "with an additional or different offense"; therefore, it does not apply to enhancement paragraphs that are not part of State's case-in-chief and need not be pleaded on face of changing instrument, which are "mere surplusage"); *Johnson v. State,* 214 S.W.3d 157, 158–59 (Tex.App.-Amarillo 2007, no pet.) (observing that enhancements need not be pleaded in indictment and holding that granting State's motion to amend date of prior conviction in enhancement paragraph did not violate article 28.10 where prior conviction was not required to be pleaded in indictment, and, therefore, amounted to "mere surplusage" that was not essential to validity of indictment). The majority acknowledges these cases but determines that "[w]e cannot follow the[ ] lead [of these courts] because this court already has binding, on-point precedent in *Boutte.*" Op. at 500.

The trial amendment cases decided by the Court of Criminal Appeals after *Hillin* are instructive. After deciding *Hillin* by a plurality vote, the Court of Criminal Appeals later approved *Hillin*'s holding en banc, stating, "[T]he clear import of our holding in *Hillin* was that the requisites of Article 28.10(b), which inferentially prohibit trial amendments over objection, are absolute." *Brown v. State,* 828 S.W.2d 762, 763 (Tex.Crim.App.1991). In *Brown,* an arson case, the indictment named "Yolander Evette Weeks" as the owner of the habitation at issue. *Id.* Proof at trial demonstrated that the complainant's first name was actually "Yolanda," and the State moved to strike "Yolander" from the indictment as mere surplusage. *Id.* The trial court did so, over Brown's objection, and

the jury charge named "Evette Weeks" as the owner of the habitation. *Id.* The Court of Criminal Appeals held that this change was an impermissible trial amendment under article 28.10(b) that was subject to defendant's absolute veto and was not subject to harm analysis on appeal. *Id.* at 763–64.

Subsequently, in *Wynn v. State,* however, the Court of Criminal Appeals addressed the converse situation from that in *Brown.* 864 S.W.2d 539, 540–41 (Tex. Crim.App.1993). Having held, in *Brown,* that the correction of the complainant's name was an amendment to the indictment that implicated article 28.10, the court held in *Wynn* that the correction of the *defendant's* name in the indictment to reflect his true name "does not constitute an amendment to the indictment as perceived by article 28.10." *Id.* at 540 (quoting *Kelley v. State,* 823 S.W.2d 300, 302 (Tex.Crim. App.1992)). Rather, it was "a *ministerial act* under [article] 26.08." *Id.* at 541 (emphasis added). The court thus drew a distinction between the ministerial act of making a correction at trial under article 26.08 of the Code of Criminal Procedure, which permits the defendant to substitute his true name for that under which he was indicted, and amending the charged offense in the indictment at trial under article 28.10(b). *Id.; see* TEX.CODE CRIM. PROC. ANN. art. 26.08 (Vernon 2009); *id.* art. 28.10.

In *Wright v. State,* the Court of Criminal Appeals again addressed the scope of article 28.10. In that case, the indictment alleged that Wright had murdered the complainant "on or about the 23rd day of March A.D.1997 . . . ." 28 S.W.3d 526, 531 (Tex.Crim.App.2000). On May 16, 1997, the State filed a motion to amend the indictment, requesting that "21" be substituted for "23" as the date of the offense, and the trial court subsequently physically

altered the indictment. *Id.* Wright apparently did not realize that the date had been changed in the indictment until the last week of voir dire in early November 1997. *Id.* Thirteen days after the conclusion of voir dire, he filed a motion to quash, claiming he had not received proper notice of the amendment. *Id.* The State disputed that claim, but conceded, after a hearing on Wright's motion, that it had improperly given notice of the change after the alteration was made, and it urged the court to continue on the original indictment. *Id.* Wright argued that the indictment would have to be amended again to reinstate the original date of the offense and that he was entitled to a ten-day continuance under article 28.10. *Id.* The trial court denied the motion to quash but proclaimed that the attempted amendment was not effective, and it presented the indictment to the jury with the original language. *Id.*

The Court of Criminal Appeals concluded that it did not need to determine whether the amendment to the indictment was effective or whether the trial court had erred in denying Wright ten days to prepare for trial. *Id.* Rather than applying article 28.10, the court held that Wright was "not harmed by these events." *Id.* at 531–32. It observed that "the 'on or about' language of an indictment allows the State to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period." *Id.* at 532. Thus, "the indictment provided adequate notice of proof for either date." *Id.* The court also noted that the State had filed its motion to amend the date in the indictment more than five months before trial began. *Id.* at 532 n. 6. It overruled Wright's issues. *Id.* at 532.

*Wright* is very similar to the instant case in that the "on or about" language in the date in the original indictment allowed the State to prove a date other than the one specifically alleged, which the amendment to a specific date two days earlier did not materially change, whereas here the substitution of the correct full name of the statute under which James was previously convicted for the incorrectly truncated name of the statute did not change the section of the Penal Code under which he had been convicted. Rather, the correction is properly viewed in both cases as a merely ministerial act. In this regard, this case is also very similar to *Wynn*, which merely changed the defendant's name from an incorrect name to a correct one, as permitted by article 26.08. Moreover, here, as in *Wright*, James was given notice well before trial of the State's intention to submit the enhancement paragraph in the indictment in its correct form. Thus, he was not harmed.

If my construction of *Wright* and *Wynn* is correct, no case law other than *Boutte* supports the majority's conclusion that a correction of an enhancement paragraph that is not part of the charged offense in an indictment is a trial amendment subject to the defendant's absolute veto under article 28.10(b), rather than a ministerial correction of mere surplusage in the indictment that may be made at trial without harm to the defendant.

I also note that, in contrast to the majority in this case, a previous panel of this Court refused to apply article 28.10 when an immaterial change was made to the enhancement paragraph in an indictment. *Simmons v. State*, 288 S.W.3d 72, 79 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). The majority finds *Simmons* distinguishable because, in that case, the record did not affirmatively show that the trial court's hand-written correction to the date of a prior conviction in an enhancement paragraph in the indictment—from February 19, 1979 to February 8, 1979—was made

after the trial had started. Op. at 507–08. However, that was not the only relevant ruling in *Simmons*. In addition, the *Simmons* court observed that "variances between an indictment and the proof of cause numbers, courts, and dates of conviction in enhancement paragraphs have been held not to be material." *Simmons*, 288 S.W.3d at 80 (citing *Freda v. State*, 704 S.W.2d 41, 42–43 (Tex.Crim.App.1986)). We also observed that, as here, the State had informed the defendant well before trial of its intent to use the correct prior conviction in its "Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses." *Id.* We concluded that, "even if the trial court had erred with respect to amending the indictment, . . . no surprise, prejudice, or harm resulted." *Id.* Thus, the variance was immaterial and not fatal. *Id.* We therefore affirmed the judgment of the trial court.[2] *Id.* I agree with the State that *Simmons* is on point in vital respects.

There are numerous indications in the record of this case that the corrections to the enhancement paragraph made here were not prohibited trial amendments to the form or substance of the indictment within the scope of article 28.10(b). Here, the correction in the title of the offense from "Injury of the Elderly" to "Injury to Child, Elderly, Disabled Individual"—the correct full title of the statute under which James was previously convicted—was an immaterial variance, as even the majority agrees, in that injury to either an elderly person or a child constitutes the same offense under Penal Code section 22.04(a). *See Freda*, 704 S.W.2d at 43 (holding that, in absence of surprise or prejudice, vari-

ance between indictment and proof at trial was immaterial and not fatal when indictment correctly alleged date of prior offense, cause number of prior offense, court returning conviction for prior offense, location of convicting court, and fact that offense was felony); *see also Wynn*, 864 S.W.2d at 541 (holding correction of indictment at trial to reflect true name of defendant did not constitute amendment within purview of article 28.10 but was ministerial act under article 26.08); *Simmons*, 288 S.W.3d at 79–80 (holding undated amendment of enhancement paragraph changing date of prior offense by eleven days did not fall within scope of article 28.10 and observing that variance was immaterial and appellant had notice of amendment).

Here, as in *Wright* and *Simmons*, the State filed with the trial court and served on James's counsel, twenty-seven days before trial, a "Notice of Intention to Use Prior Convictions and Extraneous Offenses" that reflected the correct charge and county information regarding James's prior conviction, including the correct full title of the prior conviction. *See Wright*, 28 S.W.3d at 531; *Simmons*, 288 S.W.3d at 78–79. Therefore, I would conclude that James, like the defendants in *Wright* and *Simmons*, had sufficient notice of the prior conviction that the State intended to use against him as a punishment enhancement and that James was not harmed by the corrections. *See Wright*, 28 S.W.3d at 531–32 (holding that attempted amendment to substitute "21" for "23" as the date of the offense, in place of "on or about the 23rd day of March A.D.1997 . . . ." in original indictment was not harmful error

---

**2.** In *Simmons*, we also cited with approval the Amarillo Court of Appeals' holding in *Johnson v. State*, 214 S.W.3d 157, 158–59 (Tex.App.-Amarillo 2007, no pet.), that article 28.10 does not apply to amendments of enhancement paragraphs because these allega-

tions are "unessential to the validity of the indictment" and, thus, are "comparable to surplusage." *Simmons v. State*, 288 S.W.3d 72, 80 n. 6 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd).

when amendment provided adequate notice of proof of either date and defendant had notice of substitution prior to trial although actual amendment was sought and denied at trial); *Simmons,* 288 S.W.3d at 80.

I would overrule *Boutte,* and I would hold, in light of *Wright, Wynn,* and *Simmons* and the holdings of those of our sister courts that have considered corrections made to an enhancement paragraph that is not part of the charged offense in an indictment, that the corrections to the enhancement paragraph in this case to reflect the correct name of the statute under which James was previously convicted and the correct county of the previous conviction were ministerial acts that corrected mere surplusage in the indictment, and, therefore, the corrections do not fall within the scope of article 28.10 and, in the absence of surprise or prejudice, were not harmful error. *See Thomas,* 286 S.W.3d at 114; *Stautzenberger,* 232 S.W.3d at 327–28; *Johnson,* 214 S.W.3d at 158–59.

I would overrule James's third issue.

### Conclusion

I would affirm the judgment of the trial court.

