

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00253-CR

PATRICK EUGENE COLEMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 66,450-D, Honorable Don R. Emerson, Presiding

May 27, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Patrick Eugene Coleman, appeals the trial court's judgment of conviction for aggravated assault with a deadly weapon and the resulting ten-year sentence of imprisonment.[1] On appeal, he challenges the sufficiency of the evidence to support the jury's finding that the pistol he used during the commission of the assault—which was later discovered to most likely be an unloaded $CO_2$-propelled air pistol—was a deadly weapon. We will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

## Factual and Procedural History

Christy Johnson, an employee at a northwest Amarillo United supermarket, alerted a store manager, Lisa Garza, that there was man suspected of shoplifting inside the store. Garza spotted the man to whom Johnson referred, a man later identified as appellant, as he was nearing a store exit. Garza directed Johnson to enlist the help of one or more male managers. As Johnson went to do so, Garza followed closely behind appellant as he walked out of the store exit and directed him at least twice to come back inside the store. As Garza was preparing to reach for appellant's left arm, he turned toward her. Appellant warned her, "Don't or I'll shoot you," and he showed her a gun that had been concealed under his coat or waistband. Garza explained that appellant never pointed the gun directly at her, but he displayed the gun and held it with his right hand somewhat close to his chest such that she could see the "top part of the barrel" of that gun as he threatened to shoot her with it.

Carol Shepherd, manager of the supermarket's floral department, had seen the interaction shortly before appellant began to leave the store. Noticing that Garza was following appellant out of the store, Shepherd followed shortly behind the two of them. She heard Garza try to coax appellant back into the store and also saw appellant turn around and display the gun. She testified that she was approximately five feet behind Garza at the time and, from her vantage point, was able to very clearly see the gun appellant displayed to Garza.

Immediately after the interaction, Garza was very upset. She described herself as "froze[n] in [her] tracks" as she watched appellant walk away toward his car. She

2

acknowledged that she had a mobile phone in her hand but was too rattled or shaken to be able to call 911. She called out to fellow coworkers to call 911, that appellant had just pointed a gun at her. Garza and other employees tried but were unable to get a license plate number of the car in which appellant left the scene, but they did get a good description of the car, which they reported to responding officers: a red, two-door Dodge Intrepid with clear plastic tape over the passenger door window.

Responding Amarillo Police Department officer, Corporal Donna Hill, broadcast a description of appellant's car, and APD patrol officer, Weldon Cox, located a matching vehicle a short time later at a convenience store but with a female as its driver and sole occupant. When Cox approached the female, she explained that her friend, Patrick, had come to her residence and, when she asked him to take her to get refreshments, he invited her to just use his car and drive herself there. She did. Cox and other APD officers who had arrived to assist conducted a search of the vehicle and found what was later identified as a $CO_2$ pellet gun, or air pistol, in the glove compartment of the car.

A second air pistol and appellant himself would later be found when officers arrived at the female friend's motel room. Appellant was arrested and charged with aggravated assault using a deadly weapon. A Potter County jury found appellant guilty, and the same jury assessed punishment at ten years' incarceration. The trial court imposed sentence accordingly. Appellant timely appealed and, on appeal, contends that the evidence was insufficient to show that the object he used or exhibited during the commission of the assault was a deadly weapon. We will affirm.

3

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

## Applicable Law

A person commits assault if he "intentionally or knowingly threatens another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2013). An assault becomes aggravated if the actor commits assault and uses or exhibits a deadly

4

weapon during commission of the assault.  *See id.* § 22.02(a)(2).  Again, appellant challenges only the deadly weapon finding as it relates to his conviction for aggravated assault with a deadly weapon.  We need, then, to focus our review only on the evidence relevant to the character of the weapon appellant used when he threatened Garza with imminent bodily injury.

The Texas Penal Code defines a "[d]eadly weapon" as (1) "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or (2) "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  *Id.* § 1.07(a)(17) (West Supp. 2013).  "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Id.* § 1.07(a)(46).  The Texas Court of Criminal Appeals has summarized the statutory definitions of "deadly weapon" as meaning that "[a] weapon can be deadly by design or use."  *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *Alonzo v. State*, No. 07-12-00244-CR, 2014 Tex. App. LEXIS 3703, at *8 n.3 (Tex. App.—Amarillo Apr. 7, 2014, pet. filed) (mem. op., not designated for publication).

The State may prove that a BB or pellet gun is a deadly weapon through several means, including lay or expert testimony that the weapon is capable of causing serious bodily injury. *See, e.g.*, *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) (affirming deadly-weapon finding when police testified BB gun at issue could cause serious bodily injury if pointed and fired at someone); *Campbell v. State*, 577 S.W.2d 493, 495–96 (Tex. Crim. App. [Panel Op.] 1979) (discussing expert ballistic testimony

5

regarding BB gun's capacity to harm); *Williams v. State*, 240 S.W.3d 293, 299 (Tex. App.—Austin 2007, pet. ref'd) (op. on reh'g) (observing that State introduced warning label for $CO_2$ air gun that identified risk of serious injury or death); *Corte v. State*, 630 S.W.2d 690, 691–92 (Tex. App.—Houston [1st Dist.] 1981, pet. ref'd) (affirming deadly-weapon finding when police investigator testified that $CO_2$ pellet gun used in robbery "was capable of inflicting serious bodily injury"). In some cases, the State has failed to prove that the BB or pellet gun is a deadly weapon. For instance, in *Mosley v. State*, 545 S.W.2d 144, 145 (Tex. Crim. App. 1976), although the defendant had pointed a BB gun at a woman during an assault, the court noted that the gun was not loaded, had not been pointed directly at the woman's face, and had not been used to bludgeon the woman. Further, the State's expert witness testified that a projectile fired from that BB gun could not penetrate skin, but probably could cause loss of sight if a person were shot in the eye. *See id.* Ultimately, based on the evidence before it, the *Mosley* court concluded that the BB gun used in that case was not a deadly weapon in that it was not designed, made, or adapted for the purpose of inflicting serious bodily injury and was not calculated to produce death or serious bodily injury. *See id.* at 146.

Appellant relies heavily on the position taken in *Mosley*, pointing to the evidentiary parallels between that case and the instant case. To more closely examine his reliance on *Mosley* in support of his contention that the subject air pistol is not a deadly weapon, we will look to the evidence in the record before us.

Analysis

Evidence Concerning the Displayed Weapon

Garza testified that there was no doubt in her mind that the object appellant was holding was a gun, that she was able to see the top part of the barrel as he held it in his right hand somewhat close to his chest. She explained that he pulled out the gun from his clothing but agreed that he did not point it directly at her and never pointed it in her face. Shepherd, who had been following closely behind Garza and appellant, was also able to see the incident. She explained that appellant "turned around, opened his coat up, and had what I saw looked like a pistol." She very clearly saw the pistol from her vantage point.

Evidence Concerning the Air Pistol

Treating either of the discovered air pistols as the weapon appellant displayed when he threatened Garza, we have reviewed the record for evidence concerning the character and capacity of those weapons.[2] Describing the air pistol found in the motel room, APD Sergeant Anthony Merriman characterized the weapon as a $CO_2$-propelled BB gun and testified that he believed that the air pistol was "capable of putting somebody's eye out."

APD Officer Jason Gipson, a patrol officer and firearms instructor with the APD, described the air pistol found in the glove compartment of appellant's car as one

---

[2] We proceed under the assumption that the object used was one of the two air pistols found during the investigation rather than another unidentified pellet gun or other handgun. Indeed, the evidence presented gave the jury no reason to believe the gun appellant used was anything but an air pistol. *See Alonzo*, 2014 Tex. App. LEXIS 3703, at *13.

7

"fashioned to look like a large caliber revolver." He, too, agreed that an air pistol of such design was capable of putting someone's eye out. In an exchange with defense counsel on the nature and capacity of the gun, Gipson explained further, elaborating on the particular design of this gun:

Q: And unless it were pointed at your head, it – it couldn't put your eye out, could it?

A. Sir, I don't know.

Q. Well, in your opinion, based on your training –

A. My opinion, if someone pointed this gun at me, I would have to shoot back at them.

On redirect examination, Gipson clarified and elaborated:

Q. If you were looking at that weapon from a few feet away in someone else's hand, you said if someone was pointing it at you, you would have to shoot them?

A. Yes, sir.

Q. Would that weapon look like a – a real firearm –

A. Yes, sir. It's –

Q. – from a distance of a foot or two?

A. It's specifically fashioned to look like a real firearm. Most $CO_2$ guns – if you'll allow me to show this. Most $CO_2$ guns have a – I refer to it as a wrench, which is kind of a little screw device which activates that $CO_2$ cartridge and pushes it forward, and it punctures the top of the $CO_2$ cartridge. This one has one, but it's hidden inside the grip right here, and it's specifically hidden to conceal that – I refer to it as a wrench. That may not be the proper terminology. But you can see that it doesn't protrude out of the grip as it does on normal $CO_2$ guns. This is fashioned to look just like a .357 revolver. And, in fact, somewhere on here, it says .357 on it. So it's as real to the real thing as can be, in my opinion, dangerously so.

Corporal Billy Ray Haden testified about the air pistol found in the motel room, in large part, echoing Gipson's testimony about the design and capacity of the other air pistol:

Q: And does that appear to be, if you were looking at that weapon from a foot or two away, does that appear to be a real semiautomatic firearm?

A. Yes, sir, it does.

Q. But, in fact, it is not a real firearm?

A. It is not.

Q. It's a pellet gun?

A. Yes, it's like a .177 caliber pellet gun.

Q. And in your opinion, would that firearm be able to put your eye out if it was – it you were hit with a pellet that comes out of that firearm?

A. Yes, sir.

Discussion

From this testimony, we see that there is sufficient evidence that an air pistol designed like either pistol found in this investigation was capable of causing serious bodily injury. More specifically, based on the APD's officers' testimony, a fact-finder could conclude beyond a reasonable doubt that, if the air pistol were used to shoot a person, the air pistol was capable of causing serious bodily injury, including the possibility of "permanent disfigurement" or "protracted loss or impairment of the function of any bodily member or organ." *See* TEX. PENAL CODE ANN. § 1.07(a)(17), (46). Viewing the evidence in the light most favorable to the verdict, we hold the State presented sufficient evidence to support the jury's finding that the pistol appellant used when he threatened Garza was a deadly weapon. *See Brooks*, 323 S.W.3d at 912; *see*

9

*also Adame*, 69 S.W.3d at 582 (holding that State had presented sufficient evidence that a particular BB gun was capable of causing serious bodily injury).

In the face of this evidence, appellant emphasizes the point that, when each air pistol was discovered by police, it was unloaded. In fact, the air pistol found in the glove compartment of his car did not even have a $CO_2$ cartridge, the absence of which would render the weapon entirely incapable of causing serious bodily injury. Again, appellant's contention relies heavily on the position taken in *Mosley*, in which the Texas Court of Criminal Appeals concluded that an unloaded air pistol was not a deadly weapon, in part, because defendant never pointed it at the victim's face. *See Mosely*, 545 S.W.2d at 145 (noting also that State's expert witness testified that BB gun's projectile could not penetrate skin). Ultimately, however, whether the air pistol was loaded at the time of a criminal transaction is of no moment in our deadly-weapon analysis; the crucial question before us is only whether it is "capable of causing serious bodily injury." *See Adame*, 69 S.W.3d at 582; *James v. State*, No. 01-10-00693-CR, 2012 Tex. App. LEXIS 3019, at *7 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, pet. ref'd) (opinion designated for publication). Indeed, the presence of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (citing *Tisdale v. State*, 686 S.W.2d 110, 114–15 (Tex. Crim. App. 1984) (en banc) (op. on reh'g)). Therefore, the fact that the State did not provide evidence at trial that the air pistol was loaded does not undermine the jury's deadly-weapon finding. Further, in circumstances such as these, where appellant threatened to shoot Garza and displayed the weapon, the jury may infer that the air

pistol was loaded. *See Adame*, 69 S.W.3d at 582 (citing *Delgado v. State*, 986 S.W.2d 306, 308 (Tex. App.—Austin 1999, no pet.)).

Appellant also points to the evidence suggesting that appellant never pointed the weapon directly at Garza's face as evidence that the weapon could not have caused bodily injury to Garza. Again, however, we must concentrate on the critical inquiry before us: whether the gun had the capacity to cause serious bodily injury. When there is no dispute regarding whether an air gun has been used or exhibited during an offense, the question of whether that offense is enhanced to aggravated status hinges on the capability of the air gun. *See James*, 2012 Tex. App. LEXIS 3019, at *7–8. Appellant's contentions, here, that the gun was displayed in such a way as to not pose a direct threat of serious bodily injury to Garza sounds more in terms of a challenge to the element of whether appellant used or exhibited the gun during the commission of an assault. *See id.* at *7. And, "this case is not a 'used or exhibited' case since the evidence clearly shows that appellant used and exhibited the BB gun during the convenience store robbery. The issue here is whether appellant's BB gun was 'capable' of causing serious bodily injury." *Adame*, 69 S.W.3d at 582. The evidence that appellant displayed the air pistol to Garza as he stood a short distance from her and threatened to shoot her and that the air pistol was capable of causing serious bodily injury if pointed and fired at someone is sufficient to support the jury's deadly-weapon finding. *See id.*

Despite appellant's specific contentions regarding the insufficiency of the evidence to support the deadly-weapon finding, we return to our conclusion: viewing the evidence in the light most favorable to the verdict, we hold the State presented sufficient

11

evidence to support the jury's finding that the pistol appellant used when he threatened Garza was a deadly weapon. *See Brooks*, 323 S.W.3d at 912; *Adame*, 69 S.W.3d at 582. Accordingly, we overrule appellant's sole point of error.

Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Do not publish.