# NO. 12-16-00003-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICKEY SHAYNE BOYKIN,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rickey Shayne Boykin appeals his conviction for two counts of arson. Appellant raises six issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with two counts of arson, a second degree felony. The indictment also included two felony enhancement paragraphs.[1] Appellant pleaded "not guilty" to both counts, and the case proceeded to a jury trial. The jury found Appellant guilty of both counts of arson.

At Appellant's election, the trial court assessed his punishment. At the punishment hearing, the trial court allowed the State to amend both allegations contained in the enhancement paragraphs of the indictment. Appellant pleaded "not true" to the enhancement allegations. The trial court found both allegations "true" and assessed Appellant's punishment at imprisonment for twenty-five years. This appeal followed.

---

[1] If it is shown on the trial of a felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2016).

## AMENDMENTS TO ENHANCEMENT PARAGRAPHS

In his sixth issue, Appellant contends that the trial court erred in allowing the State to make two amendments to the enhancement paragraphs of the indictment after the trial had begun and over his objection.

## Applicable Law

The State may amend an indictment after the trial on the merits commences if the defendant does not object. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006). Conversely, if the defendant objects, the State may not amend the indictment after trial has commenced. *Hillin v. State*, 808 S.W.2d 486, 489 (Tex. Crim. App. 1991).

The indictment is not amended when the trial court grants an oral motion to amend. *Riney v. State*, 28 S.W.3d 561, 566 (Tex. Crim. App. 2000); *Johnson v. State*, 214 S.W.3d 157, 158 (Tex. App.—Amarillo 2007, no pet.). Instead, the State amends an indictment by physically altering the indictment, or a copy thereof, with the desired changes. *Johnson*, 214 S.W.3d at 158.

Because a violation of article 28.10 is not a constitutional error, a reviewing court evaluates harm on the basis of whether the error affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *James v. State*, 425 S.W.3d 492, 500 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict or the fact finder's decision. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In the context of an amendment to an indictment, an appellant shows harm when his defense was impaired by the timing of the State's notice. *See James*, 425 S.W.3d at 501.

In addition to the statutory restrictions on an amendment to an indictment, a defendant has due process and due course of law rights under the United States and Texas Constitutions to notice of any prior convictions to be used to enhance the punishment range of the defendant. *Villescas v. State*, 189 S.W.3d 290, 292-93 (Tex. Crim. App. 2006). The State must plead the enhancements in some form, but not necessarily in the indictment. *Id.* at 292. When a defendant has no defense to an enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies constitutional notice requirements. *Id.* at 294.

**Application**

In the indictment's first enhancement paragraph, the State alleged that Appellant was finally convicted of the felony offense of unlawful possession of a firearm by a felon on March 20, 1996. In the second paragraph, it alleged that he was finally convicted of the felony offense of obstruction or retaliation in Jefferson County. At the beginning of the punishment hearing, the State orally moved to amend the first enhancement paragraph to read that Appellant was convicted on March 13, 1996. The State further moved to amend the second paragraph to read that Appellant was convicted in Orange County.

Appellant objected to both proposed amendments on the ground that it was "too late" to amend the enhancement paragraphs. The trial court granted the State leave to make both amendments. However, from our review of the record, it does not appear as though the State ever made actual changes to the indictment or a copy thereof. *See Johnson*, 214 S.W.3d at 158. Thus, the indictment was not amended.[2]

On appeal, Appellant first argues that the trial court violated article 28.10 by allowing the amendments after the trial had begun and over his objection. Even assuming the indictment was erroneously amended, Appellant has failed to demonstrate that he was harmed by the amendments. *See James*, 425 S.W.3d at 501. Appellant urges this Court to adhere to our precedent in *Dixon v. State* and reverse the trial court's judgment without conducting a harm analysis. 932 S.W.2d 567 (Tex. App.—Tyler 1995, no pet.). In *Dixon*, we examined similar amendments to an enhancement paragraph. *Id.* at 568. We held that the trial court erred when it allowed amendments to the indictment on the day the jury was impaneled and sworn. *Id.* at 570. Under binding precedent at that time, we did not conduct a harm analysis of the error. *See Sodipo v. State*, 815 S.W.2d 551, 556 (Tex. Crim. App. 1990). Accordingly, we reversed and remanded for a new trial. *Dixon*, 932 S.W.2d at 570. We noted, however, that the late amendments consisted of only minor changes and very likely had no effect on the defendant's ability to prepare for trial. *Id.* We further noted that if the error was subjected to harm analysis, we would likely have found no harm. *Id.*

---

[2] We recognize there is authority that enhancements are not subject to the amendment restrictions of article 28.10. *See, e.g., Johnson*, 214 S.W.3d at 158. However, because no amendment was made in this case, we need not reach that issue. *See* TEX. R. APP. P. 47.1.

3

The appellate rule regarding reversible error in criminal cases has changed since our decision in ***Dixon***. Prior to September 1, 1997, the rule stated that "[i]f the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX. R. APP. P. 81(b)(2) (amended 1997). Effective September 1, 1997, amended Texas Rules of Appellate Procedure were adopted. Under the 1997 amendments, reversible error in criminal cases was divided into two categories: "constitutional errors" and "other errors." TEX. R. APP. P. 44.2(a), (b). Since the 1997 amendments, the court of criminal appeals has conducted harm analyses on complaints of erroneous amendments to indictments. *See **Wright v. State***, 28 S.W.3d 526, 531 (Tex. Crim. App. 2000).

Unlike when ***Dixon*** was decided, now we must review an alleged error of a late amendment to an indictment for harm, and only reverse if the error affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2. Here, Appellant has not alleged any confusion regarding the late changes or any potential defense to the enhancements. We further note that Appellant admitted to previous felony convictions for possession of a firearm, retaliation, and burglary of a building during his testimony at the guilt/innocence portion of the trial. Accordingly, we conclude that Appellant's substantial rights were not affected by the amendments to the enhancement allegations. *See **James***, 425 S.W.3d at 501.

Appellant further argues that his rights to due process and due course of law were violated by the amendments. We disagree. The State notified Appellant that it intended to introduce evidence of his prior convictions listed in the indictment. In addition, the State also filed the "State's Notice of Extraneous Evidence, Brady Material and Impeachment Evidence," which lists five of Appellant's previous convictions, including the two listed in the indictment (albeit with the same errors contained in the indictment). Finally, the State provided oral notice of the corrections to Appellant at the beginning of the punishment phase. Appellant made no suggestion that he had a defense to the enhancement allegations or that he needed a continuance in order to prepare a defense. Under these circumstances, we conclude that the State provided sufficient notice to satisfy any constitutional concerns. *See **Villescas***, 189 S.W.3d at 294.

We overrule Appellant's sixth issue.

4

In his first, second, and fifth issues, Appellant challenges the legal sufficiency of the evidence to support his convictions for arson and the trial court's finding that he is a habitual offender.

**Standard of Review**

In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. ***Padilla v. State***, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899. We give deference to the jury's responsibility to fairly resolve evidentiary conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. ***Id.*** A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. ***Hernandez v. State***, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

A plea of "true" will satisfy the state's burden of proving an enhancement allegation, but there must be affirmative evidence in the record showing that the defendant entered a plea of "true." ***Wood v. State***, 486 S.W.3d 583, 587-88 (Tex. Crim. App. 2016). If there is no affirmative evidence showing a plea of "true," the state must prove the allegation beyond a reasonable doubt. ***Id.*** at 588. To show that a defendant has been convicted of a prior offense, the state must prove beyond a reasonable doubt that the prior conviction exists and that the defendant is linked to the conviction. ***Id.*** There is no specific manner of proof required to establish these two elements. ***Id.***

**Applicable Law**

As applicable here, a person commits arson by starting a fire, regardless of whether the fire continues after ignition, or causing an explosion with intent to destroy or damage (1) any vegetation, fence, or structure on open-space land or (2) any building, habitation, or vehicle that is located on property belonging to another. *See* TEX. PENAL CODE ANN. § 28.02 (West 2011).

For the state to prove a person is subject to the enhanced punishment range of a habitual felony offender, it must establish the following chronological sequence of events: (1) the first felony conviction becomes final, (2) the person commits an offense leading to another later felony conviction, (3) the second felony conviction becomes final, and (4) the felony offense for which the person presently stands accused is committed. *See id.* § 12.42(d); *Ex Parte Miller*, 330 S.W.3d 610, 624 (Tex. Crim. App. 2009).

**Count One – House at 111 Van Street**

In Count One, Appellant was charged with starting a fire with the intent to damage or destroy a building located at 111 Van Street. In Appellant's first issue, he contends that the evidence to convict him of this count of arson is legally insufficient in two respects. First, Appellant argues that the evidence failed to establish that he was the person who started the fire. Second, Appellant argues that the evidence failed to establish that he knew the house was owned by another. We disagree.

The evidence shows that Appellant gave a recorded statement to City of Lufkin Fire Marshal Steve McCool. Appellant initially denied being around the house or near the fire at any time. However, he later changed his story, admitting that he went by the house and saw people next door. Appellant further admitted that an acquaintance of his, Paul Mizler, was staying in the house. Appellant said that he was angry with Mizler for taking his bicycle. He claimed that he went behind the house to see if Mizler was there and then left. Appellant denied starting the fire or even knowing about it until a few days later. Toward the end of Appellant's statement, McCool asked, "Would you have caught the house on fire if [Mizler] was in it?" Appellant responded, "Well, of course not. I'd have got my bike and left."

Joe Burton, a lieutenant paramedic and fire investigator with the Lufkin Fire Department, investigated the fire. Based on his investigation, he opined that someone entered the back door and started the fire on the back wall. Burton concluded that the fire was started intentionally and spread quickly.

6

Burton spoke with Clarence Hightower and Latonya Siggers, who had been on the porch next door. Siggers and Hightower saw a man walk from the front of the house to the back, and then reappear a short time later. Almost immediately thereafter, the house was on fire. Siggers identified the man as Appellant. Hightower believed that the man was Appellant, but he said he could not be absolutely positive. Siggers and Hightower had seen Appellant at the house several times previously. They also knew that Mizler had been living in the shed behind the house.

Mizler testified that he and Appellant were drinking buddies. Mizler knew that Appellant had several bicycles. He admitted borrowing Appellant's bicycles in the past and probably had kept the bicycles longer than Appellant intended. Mizler stated that he had stayed at the house at 111 Van Street and that the house caught on fire. He did not directly implicate Appellant in setting the fire.

Appellant testified at trial and denied starting the fire. He speculated that a cat knocked over a lit candle and started the fire. Appellant admitted that he was at the house looking for Mizler because Mizler had borrowed his bicycle. He further admitted that Mizler had taken Appellant's bicycle several times and that he was "always mad at [Mizler]."

The State also produced evidence that the house was owned by someone other than Appellant, and that Appellant knew this. Burton stated that McCool determined who owned the house. Burton said that although Mizler had been living there, he was a squatter and had no ownership of the house. Other witnesses, including Appellant, testified that Mizler had been living at the house, but that someone else owned the house. Appellant claimed that a friend of Mizler threatened to file a report so that Mizler could no longer live at the house. Hightower testified that the house was not owned by Appellant, but by a man who lived in Houston.

As sole judge of the weight and credibility of the evidence, the jury was free to reject Appellant's testimony that he did not start the fire. *See Brooks*, 323 S.W.3d at 899. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that Appellant started a fire with the intent to damage a building that was located on property belonging to another, and is therefore guilty of the first count of arson. *See* TEX. PENAL CODE ANN. § 28.02(a)(2)(D); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789, 61 L. Ed. 2d 560. Accordingly, we overrule Appellant's first issue.

## Count Two – Open Space Land at 307 North Timberland Drive

In Count Two, Appellant was charged with starting a fire with the intent to damage or destroy vegetation on open space land located at 307 North Timberland Drive. This fire occurred behind an HEB supermarket and damaged a make-shift dwelling that Mizler was using. In Appellant's second issue, he contends that the evidence to convict him of this count of arson is legally insufficient.

In Appellant's statement to McCool, he admitted starting the fire on open space land behind HEB. Appellant denied being angry with Mizler regarding the use of his bicycle at the time of this fire, but admitted that he was angry because he expected Mizler to be at his make-shift dwelling and Mizler was not present.

At trial, Appellant admitted being present at Mizler's dwelling behind HEB before the fire started. He claimed that his feet were wet and he started the fire to dry his shoes. Appellant contended that he accidentally lost control of the fire and that he had no intent to burn Mizler's property.

McCool also spoke to Mizler about several fires, including the one behind HEB. Mizler told McCool that Appellant admitted starting the fire behind HEB. At trial, Mizler recounted that he had built the make-shift shelter on open land behind HEB, and that the property and his belongings had caught on fire. Mizler said Appellant admitted to possibly starting the fire.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that Appellant started a fire with the intent to destroy or damage vegetation, fence, or a structure on open-space land, and is therefore guilty of the second count of arson. *See* TEX. PENAL CODE ANN. § 28.02(a)(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789, 61 L. Ed. 2d 560. Accordingly, we overrule Appellant's second issue.

## Enhancement – Habitual Felony Offender

In issue five, Appellant contends that the evidence is insufficient to prove that he was a habitual offender. The State alleged that Appellant "was finally convicted of the felony offense of Unlawful Possession of a Firearm – Felon" on March 20, 1996, and "was finally convicted of the felony offense of Obstruction or Retaliation" on April 5, 2004. As previously discussed, the State made two corrections prior to the trial court receiving evidence at the punishment hearing. First, the State corrected the date that Appellant was finally convicted of unlawful possession of

a firearm by a felon from March 20 to March 13, 1996. Second, the State corrected the county in which Appellant was finally convicted of obstruction or retaliation from Jefferson County to Orange County.

After the State read aloud the first corrected allegation, the trial court asked Appellant whether it was true or not true. Appellant responded, "It's true on the conviction but the location is wrong, sir, I was convicted in Orange." Appellant then pleaded "not true" to that allegation.

After the State read aloud the second corrected allegation, the following exchange occurred:

TRIAL COURT: How do you plead?

APPELLANT: That's true, but the Orange enhancement had Beaumont on it, different county.

TRIAL COURT: Well, the Orange one had Jefferson County on it.

APPELLANT: Yes, sir.

TRIAL COURT: This amended one that was just read said Orange County.

APPELLANT: That's correct.

TRIAL COURT: And you're pleading true to that one?

APPELLANT: I'm not sure of the date but it's pretty close.

Defense counsel subsequently entered a plea of "not true" to the second allegation for Appellant because he was not sure of the date.

To prove the enhancement allegations, the State offered the pen packets of Appellant's convictions for unlawful possession of a firearm by a felon and obstruction or retaliation. From the pen packet regarding the unlawful possession of a firearm conviction, the State presented evidence that (1) Appellant committed the offense on February 17, 1996; (2) he pleaded "guilty" on March 13, 1996; (3) the trial court found Appellant guilty of the offense on March 13, 1996; (4) pursuant to a plea bargain agreement, the trial court sentenced Appellant to imprisonment for a term of six years; and (5) Appellant waived his right to appeal. From the pen packet regarding the obstruction or retaliation conviction, the State presented evidence that (1) Appellant committed the offense on July 1, 2003; (2) he pleaded "guilty" on April 5, 2004; (3) the trial court found Appellant guilty of the offense on April 5, 2004; (4) pursuant to a plea bargain

9

agreement, the trial court sentenced Appellant to imprisonment for a term of six years; and (5) the trial court admonished Appellant that it must give him permission to prosecute an appeal on any matter in the case except those matters raised by written motions filed prior to trial. The judgment states, "NOTICE OF APPEAL: NONE." Thus, the State presented evidence that Appellant had a felony conviction that became final on March 13, 1996, he committed an offense leading to a later felony conviction on July 1, 2003, and the second felony conviction became final on April 5, 2004. All of these events occurred before Appellant committed either of the felony offenses in this case.

Although Appellant pleaded "not true" to the enhancement allegations, it appears that he did so not because the convictions in the pen packets were not his, but because he either disagreed with or could not remember details of the convictions. Furthermore, Appellant admitted to previous felony convictions for unlawful possession of a firearm and retaliation during his testimony at the guilt/innocence portion of the trial. After hearing all the evidence, the trial court found both allegations "true" and assessed Appellant's punishment at imprisonment for twenty-five years. Viewing the evidence in the light most favorable to the prosecution, the trial court was rationally justified in finding beyond a reasonable doubt that the enhancement allegations were true and that Appellant was a habitual felony offender. *See* TEX. PENAL CODE ANN. § 12.42(d); *Wood*, 486 S.W.3d at 587-88; *Ex Parte Miller*, 330 S.W.3d at 624.

Accordingly, we overrule Appellant's fifth issue.[3]

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, Appellant contends that he received ineffective assistance of counsel because counsel failed to object to the trial court's application of the habitual felony offender punishment range.

#### Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App.

---

[3] Having found that the evidence is sufficient to find that Appellant is a habitual felony offender, we need not address the merits of his third issue, namely, that the trial court erred by applying the wrong punishment range. *See* TEX. R. APP. P. 47.1. Therefore, we overrule Appellant's third issue.

10

1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was deficient. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This requires the appellant to demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See id.*, 466 U.S. at 688, 104 S. Ct. at 2064-65. To satisfy this requirement, the appellant must identify the acts or omissions of counsel alleged to constitute ineffective assistance and affirmatively prove that they fell below the professional norm for reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Trial counsel is not ineffective for failing to object unless the trial court would have committed error in overruling the objection. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Under the second prong of the *Strickland* test, the appellant must affirmatively prove prejudice from the deficient performance of his counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd). The appellant must prove that his counsel's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Id.* He instead must show that there is a reasonable probability that, but for his counsel's errors, the outcome would have been different either as to a reasonable doubt about his guilt or the extent of his punishment. *See id.*; *see also Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail. *Tong*, 25 S.W.3d at 712.

## Application

We have held that the trial court did not err in finding that Appellant was a habitual felony offender. Therefore, the trial court would not have erred in overruling an objection to its application of the habitual felony offender punishment range. Accordingly, Appellant's trial

counsel was not ineffective for failing to object to the application of that punishment range. *See Vaughn*, 931 S.W.2d at 566.  We overrule Appellant's fourth issue.

## DISPOSITION

Having overruled Appellant's six issues, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered May 24, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 24, 2017**

**NO. 12-16-00003-CR**

**RICKEY SHAYNE BOYKIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2015-0475)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*