

IN THE
TENTH COURT OF APPEALS

No. 10-21-00307-CR

RONALD JAMES BRYANT,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 82nd District Court
Falls County, Texas
Trial Court No. 10310

MEMORANDUM OPINION

Ronald James Bryan was convicted of aggravated robbery and sentenced to life in prison. TEX. PENAL CODE § 29.03(a)(2). Because the evidence was sufficient to show the BB gun used in the offense was a deadly weapon, the trial court's judgment is affirmed.

BACKGROUND

A man, later identified as Bryant, entered a bank in Marlin, Texas, carrying a big bag and wearing an orange hoodie with the hood up over his head, a wig, a cap, and sunglasses. He proceeded to the only teller in the bank that day, took out what looked to

be a handgun, pointed it at the teller's chest, and demanded money in $50's and $100's. He specifically did not want money with dye packs. The teller grabbed money, avoiding the dye packs, and put it in Bryant's bag. When she finished, Bryant demanded that the teller open the next teller's money drawer. When she told him she could not because she was the only teller, Bryant looked in the bag and walked out of the bank. Four to five hours later, Bryant was arrested in another town. A wig and cap were located at his stepdaughter's apartment, and money and a realistic looking BB gun/handgun were found in the car of Bryant's wife. Bryant had been driving the car around the time of the robbery. More money was found in Bryant's house.

## SUFFICIENCY OF THE EVIDENCE

In one issue, Bryant contends the evidence was insufficient because the State failed to show that the BB gun was a deadly weapon.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any

reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

***Deadly Weapon***

An actor commits an aggravated robbery if he commits a robbery under Section 29.02 of the Penal Code while he "uses or exhibits a deadly weapon." TEX. PENAL CODE § 29.03(a)(2). A "deadly weapon" is defined by the Penal Code as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). Serious bodily injury is defined

as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46). Our determination of whether the State introduced sufficient evidence to prove that a given BB gun qualifies as a "deadly weapon" requires a case-by-case analysis in light of the statutory standards. *James v. State*, 425 S.W.3d 492, 495 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

A BB gun is not a deadly weapon per se. *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002). In proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon used was capable of causing serious bodily injury or death in its use or intended use. *Id*.

### *Facts/Application*

The bank teller testified that when she initially encountered Bryant, he was a few feet away. He moved directly in front of her[1] and pulled out what she believed was a handgun. Bryant pointed it at her chest and demanded money. An officer employed by the Marlin Police Department examined the BB gun and agreed that it could cause serious bodily injury if it was pointed at someone from a very close distance. The weapon was designed to shoot out, rapid fire, about 480 feet per second which, the officer said, is a dangerous velocity. It could shoot 20 BBs at a time. The BB gun even had a warning on it that careless use or misuse could cause serious injury or death.

After reviewing the evidence in the light most favorable to the verdict, we find the

---

[1] The still photographs from the surveillance video showed Bryant directly in front of the teller.

jury, as a rational trier of fact, could have found the BB gun was a deadly weapon.

Bryant's sole issue is overruled.[2]

## CONCLUSION

Having overruled Bryant's sole issue, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed January 4, 2023
Do not publish
[CRPM]



---

[2] Bryant invites this Court to reconsider this State's policy behind labeling BB guns as deadly weapons. We decline Bryant's invitation.